UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JANICE TEETER, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>EASTERSEALS-GOODWILL NORTHERN ROCKY MOUNTAIN, INC.,<br><br>        Defendant. | No. CV-22-96-GF-BMM<br><br><br>ORDER |

Plaintiff Janice Teeter ("Teeter") has filed an unopposed motion for final approval of a class action settlement. (Doc. 47.) Teeter's motion also seeks an award of attorneys' fees, a service award for the class representative, and reimbursement of the settlement administrator's costs. (Doc. 48 at 6.) The Court held a hearing on the motion on April 5, 2024. (Doc. 51.) The Court will grant Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant Easterseals-Goodwill Northern Rocky Mountain, Inc. ("Easterseals") is a private, nonprofit organization. (Doc. 37 at 6.) Easterseals is a

---

[1] All terms used herein shall have the same meaning as defined in the proposed Settlement Agreement ("Agreement").

Montana corporation with its principal place of business in Great Falls, Montana. (*Id.*) An unauthorized third party allegedly gained access to email accounts that contained the personally identifiable information and/or protected health information of Easterseals' clients. (*Id.*) This data incident is alleged to have occurred from October 12, 2021, to November 11, 2021. (*Id.*) Easterseals allegedly failed to notify its clients until September 16, 2022. (*Id.*)

Teeter brought this action individually and on behalf of a putative class. (Doc. 1.) Teeter asserted claims for negligence, negligence per se, invasion of privacy, breach of confidence, breach of implied contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (*Id.*, ¶¶ 91–173.) Easterseals filed a motion to dismiss for lack of standing. (Doc. 10.) The Court granted Easterseals motion in part and dismissed all claims except the negligence claim. (Doc. 24 at 17.)

The Court granted preliminary approval of a class-wide settlement on December 22, 2023. (Doc. 38.) The Court approved certification of a provisional Settlement Class for settlement purposes only. The parties sent Notice via U.S. First Class Mail to 12,298 potential class members on January 22, 2024. (Doc. 48-2 at 2.) Mailing the Class Notice via U.S. Mail provided the best notice practicable under the circumstances and proved reasonably calculated to communicate actual notice of the Litigation and the proposed settlement to the Settlement Class. Of the 12,298 Notices sent, 693 Notices (5.6%) proved undeliverable following attempted service.

The Class Notice procedure provided potential class members until March 6, 2024, to opt-out of the class action and until March 21, 2024, to submit a claim. (Doc. 48-2 at 4.) The procedure also provided potential class members until March 6, 2024, to object to the terms of the proposed settlement. (*Id.*) All of these deadlines have now passed. The Claims Administrator reports having received 54 timely online claim forms, two late online claim forms, and one timely paper claim form. (*Id.*) One person filed an untimely opt-out form. (Doc. 48-1 at 67.)

## LEGAL STANDARD

The Court has jurisdiction over the subject matter of the above-captioned litigation pursuant to 28 U.S.C. § 1332(d). "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements." *Jones v. GN Netcom, Inc.*, 654 F.3d 935, 946 (9th Cir. 2011). A court may approve a class action settlement "only after a hearing and only on finding that [the proposed settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A court, in determining whether a proposed settlement proves fair, adequate, and reasonable, must consider whether the following prove true:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv) any agreement required to be identified under Rule 23(e)(3); and

  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## DISCUSSION

### I. Summary of the Proposed Settlement Agreement ("Agreement")

The Agreement provides relief to the following class:

> All persons residing in the United States to whom Defendant sent Notice of a Data Security Incident that was discovered on or about July 20, 2022 and involved an unauthorized person gaining access to certain email accounts that contained personal identifying information and/or personal health information.

(Doc. 48-1 at 23.) The Agreement provides that Easterseals will provide reimbursement for out-of-pocket expenses incurred up to a maximum of $1,500 per class member. (*Id.* at 24.) Out-of-pocket expenses include bank fees, postage, phone charges, and credit repair services. (*Id.* at 21, 24.) Expenses incurred for credit monitoring or other identity protection insurance products also can be reimbursed under this category. (*Id.* at 24.) The Agreement also provides for time spent remedying issues related to the Data Incident. The Agreement compensates such time at $20 per hour up to a maximum of three hours. (*Id.*)

The Agreement provides one year of identity monitoring and compensation for documented extraordinary losses suffered up to a maximum of $5,000 per class member. (*Id.* at 24, 26.) The Agreement further requires Easterseals to adopt and

maintain heightened information security protocols. (*Id.* at 28.) The Chief Legal and Privacy Officer of Easterseals has submitted an affidavit outlining the new programs and policies adopted. (Doc. 48-4.) These policies and programs include multi-factor authentication, mandatory cybersecurity training, and an encryption platform. (*Id.* at 2–3.) Finally, the Agreement provides for a service award to the class representative of up to $2,500 and attorneys' fees and costs up to $215,000. (Doc. 48-1 at 35.) Teeter and her similarly situated class members release all claims against Easterseals relating to the Data Incident as consideration for the benefits provided by the Agreement.

## II. Whether the Proposed Settlement Agreement proves adequate, fair, and reasonable

The Court already has determined that the Settlement Class is certifiable under the standards set forth in Fed. R. Civ. P. 23(a), (b)(3). (Doc. 38 at 2.) Teeter and Teeter's counsel have adequately represented the class. Teeter is a former Easterseals client that provided her personally identifiable information and personal health information to Easterseals. (Doc. 48-2, ¶ 2.) Teeter received notice of the Data Incident on September 16, 2022. (*Id.*, ¶ 3.) Teeter acknowledges that she is "willing and prepared to put the interests of absent Class Members before my own and to seek an outcome that is in the best interest of absent Class Members." (*Id.*, ¶ 6.) Teeter also notes that she spent time reviewing documents, providing input to her attorneys, and making herself available for negotiations. (*Id.*, ¶¶ 7–9.) Neither Teeter

nor her counsel know of any existing conflicts of interest with other putative class members. (*Id.*, ¶¶ 10–11; Doc. 48-1 at 4–5.)

Teeter's counsel's firm has prosecuted hundreds of class and/or representative cases and many cases involving data breaches. (Doc. 48-1 at 7, 10.) Teeter's counsel has similarly prosecuted class actions involving data breaches. (*Id.* at 12.) The proposed Agreement was negotiated at arm's length. Easterseals and Teeter received representation from counsel experienced in similar data breach class action litigation. The parties reached the Agreement after Easterseals prevailed on its motion to dismiss as to most of Teeter's claims.

The relief provided for the class also proves adequate. Teeter highlights the costs and risks of further litigation. (Doc. 48 at 11.) "Data-breach litigation is in its infancy with threshold issues still playing out in the courts." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 317 (N.D. Cal. 2018). Minimal precedent on the issues that arise in data-breach litigation leaves parties with significant uncertainty regarding their positions. This uncertainty presents substantial risk at both the trial and appellate levels. The expense, delay, and risk of further litigation strongly weighs in favor of settlement where the law remains so uncertain and undecided.

The Agreement also appears adequate in its proposed method of distributing relief to the class. The Agreement uses a claim-based approach that allows for class members to easily submit claims online or via U.S. mail. (Doc. 48-1 at 27.)

Participating class members will receive settlement benefits via check that remain negotiable for ninety days. (*Id.*) The discretion of the Settlement Administrator in assessing extraordinary losses is appropriately guided by considerations set forth in the Agreement. (*Id.* at 25.)

The Agreement's provision for attorneys' fees also supports a finding of adequacy. A district court must "'assure itself that the fees awarded in the agreement were not unreasonably high,' for if they were, 'the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief." *Jones*, 654 F.3d at 947 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964–65 (9th Cir. 2003)). The Agreement authorizes up to $215,000 in attorneys' fees. (*Id.* at 36.) Teeter's counsel submitted billing records evidencing 507.1 hours of work expended for a total of $222,315 in attorneys' fees. (Doc. 48-1 at 53; Doc. 41-1 at 68, 75.) Counsel's experience and the complexity of this litigation supports a determination that this award of attorneys' fees represents compensation for work performed and yet to be performed rather than the product of collusion.

Lastly, the Court must determine whether the Agreement proves fair. The Court, in doing so, must consider whether the proposal treats class members equitably. Fed. R. Civ. P. 23(e)(2)(D). The Ninth Circuit has also identified the following factors that prove relevant to the fairness inquiry:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Jones*, 654 F.3d at 946 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). The Agreement uses a claim-based approach that allows each class member to prove their documented losses and compensates the class members accordingly. The Agreement provides up to $7,500 in compensation along with identity monitoring. The Agreement treats individual class members equitably by awarding them compensation according to documented loss and providing equal protection to all class members against future loss through credit monitoring.

The Court now turns to addressing the factors outlined by the Ninth Circuit. The Court has already discussed the strength of Teeter's case and the risk, expense, and duration of further litigation. Given that Teeter's claims involve a newly emerging area of law with substantial uncertainty, these factors weigh in favor of a negotiated settlement. Teeter similarly acknowledges the risk that litigating in this newly emerging area of law poses for maintaining class action status. (Doc. 48 at 13.) This factor also weighs in favor of obtaining a negotiated settlement.

The Agreement offers up to $1,500 per class member and up to $5,000 per class member that suffered actual documented identity theft. The Court finds that this amount proves reasonable and fair given the risk and expense posed by further litigation and the likelihood that many claimants may have been otherwise unaware of their claims. The views of counsel support this determination. Teeter's counsel opined that the Agreement proves "fair, adequate and reasonable when balanced against the high risks of continued litigation." (Doc. 48-1 at 4.) "[R]ecommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (internal quotations omitted). The reaction of other class members also supports a determination of fairness. Over 12,000 potential class members received notices explaining the settlement. None of the class members objected and only one class member opted out of the settlement. These three factors weigh in favor of approving the settlement.

Finally, the discovery undertaken supports a finding that the Agreement represents a fair settlement of claims rather than a product of collusion. Teeter's counsel spent over 500 hours working on this case. The parties engaged in formal and informal discovery. (Doc. 48-1 at 3.) Teeter spent hours reviewing documents and assisting in the investigation and discovery process. (Doc. 48-3, ¶¶ 8–9.) The parties also engaged in pretrial briefing and a hearing on a motion to dismiss.

The Court finds that the factors set forth in Fed. R. Civ. P. 23(e)(2) and those outlined by the Ninth Circuit in *Jones* support a determination that the Agreement constitutes a fair, adequate, and reasonable settlement of the class's claims.

### III. Attorneys' Fees/Expenses

The Agreement provides for (and Class Counsel seeks) an award of up to $215,000 to Class Counsel as attorneys' fees and expenses in this action. This was negotiated separately from and will be paid separately and independently from the monies paid to Settlement Class Members for their claims. This award will not affect the amount of money any Settlement Class Member will receive for their claims.

As explained above, the award of attorneys' fees and reimbursement of litigation expenses are reasonable. The contingent nature of Class Counsel's work, the substantial amount of work performed, and the complexity of the litigation support a determination that Class Counsel will not receive a windfall incommensurate with the time and effort dedicated to the case, the risks assumed, and the results achieved by Class Counsel. The Court will grant Teeter's unopposed motion for approval of attorneys' fees. (Doc. 40; Doc. 47).

### IV. Reimbursement of Settlement Administration Costs

The Agreement requires the Settlement Administrator to perform many duties including but not limited to administering settlement payments, disseminating notice to class members, establishing the settlement website, responding to inquiries by the

class members, determining the validity of claims, and working with a credit monitoring service provider to obtain such services for class members. (Doc. 48-1 at 31.) The Court finds the settlement administration costs of $18,535 reasonable in light of the work performed by the Settlement Administrator.

## V.  Service Award

The Agreement provides for a Service Award of up to $2,500 for Representative Plaintiff Janice Teeter, subject to the Court's approval. This amount was negotiated separately from and will be paid separately and independently from the monies paid to Settlement Class Members for their claims. The Court finds this Service Award reasonable in light of the risks and burdens undertaken by Representative Plaintiff in this action and for her time and effort in bringing and prosecuting this matter on behalf of the Settlement Class.

## ORDER

Accordingly, **IT IS ORDERED** that Teeter's Unopposed Motion for Final Approval of a Class Action Settlement is **GRANTED**. It is further ordered that:

1. The Settlement Class is certified for the purposes of settlement only. The Settlement Class is hereby defined as:

   All persons residing in the United States to whom Defendant sent Notice of a Data Security Incident that was discovered on or about July 20, 2022, and involved an unauthorized person gaining access to certain email account that contained personal identifying information and/or personal health information (the "Data Incident").

2. The Agreement is hereby finally approved as fair, reasonable, adequate and in the best interest of the Settlement Class.

3. Class Counsel are awarded attorneys' fees in the amount of $215,000, inclusive of litigation costs. Class Counsel shall not seek or obtain any other compensation or reimbursement from Defendant, Plaintiff, or members of the Settlement Class.

4. Settlement administration costs are to be reimbursed in an amount of $18,535.

5. Payment of a Service Award in the amount of $2,500 to Plaintiff Janice Teeter.

6. A Final Judgment in this action is hereby entered and this shall constitute a Judgment for purposes of Federal Rules of Civil Procedure Rule 54.

7. This Final Judgment shall bind each Settlement Class Member and shall operate as a full release and discharge of the Released Claims against the Released Parties. All rights to appeal the Final Judgment have been waived. This Final Judgment and Final Approval Order shall have res judicata effect and bar all Settlement Class Members from bringing any action asserting Settlement Class Members' Released Claims under the Agreement.

8. The Agreement and Settlement are not an admission by Defendant, nor is this Final Approval Order a finding, of the validity of any claims in this action or of any wrongdoing by Defendant. Neither this Final Approval Order, this Final Judgment, the Agreement, nor any document referred to herein, nor any

action taken to carry out the Agreement is, may be construed as, or may be used as an admission by or against Defendant of any fault, wrongdoing, or liability whatsoever. The entering into or carrying out of the Agreement, and any negotiations or proceedings related thereto, shall not in any event be construed as, or deemed to be evidence of, an admission or concession with regard to the denials or defenses by Defendant and shall not be offered in evidence in any action or proceeding against Defendant in any court, administrative agency, or other tribunal for any purpose whatsoever other than to enforce the provisions of this Final Approval Order, this Final Judgment, the Agreement, or any related agreement or release. Notwithstanding these restrictions, any of the Released Parties may file in this case or any other proceeding this Final Approval Order, this Final Judgment, the Agreement, or any other papers and records on file in the case as evidence of the Settlement to support a defense of res judicata, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense as to the Released Claims.

9. Notice of entry of this Final Approval Order and Final Judgment shall be given to Class Counsel on behalf of Plaintiff and all Settlement Class Members. It shall not be necessary to send notice of entry of this Final Approval Order and Final Judgment to individual Settlement Class Members, but it shall be posted on the settlement website. The time for any appeal shall run from service of

notice of entry of the Final Approval Order and Final Judgment by Class Counsel on Defendant.

10. After entry of this Order and Final Judgment, the Court shall retain jurisdiction to construe, interpret, implement, and enforce the Agreement and this Judgment, to hear and resolve any contested challenge to a claim for settlement benefits and to supervise and adjudicate any dispute arising from or in connection with the distribution of settlement benefits.

11. In the event the Settlement does not become final and effective in accordance with the terms of the Settlement Agreement or is terminated, cancelled, or otherwise fails to become effective for any reason, then this Final Approval Order and Final Judgment, and all orders entered in connection herewith, shall be rendered null and void and shall be vacated.

DATED this 5th day of April, 2024.

_____
Brian Morris, Chief District Judge
United States District Court